**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **No. 4:23-CR-00002-SEP** |
| | ) |
| | ) |
| **TERRELL DONTA MCDANIEL,** | ) |
| | ) |
| **Defendant.** | ) |

**PLEA HEARING - VOLUME 2**

**BEFORE THE HONORABLE SARAH E. PITLYK**
**UNITED STATES DISTRICT JUDGE**

**SEPTEMBER 1, 2023**

APPEARANCES:

For Plaintiff:        Jeannette Graviss, Esq.
                      OFFICE OF THE U.S. ATTORNEY
                      111 South 10th Street, 20th Floor
                      St. Louis, MO 63102

For Defendant:        Lenny Kagan, Esq.
                      LAW OFFICE OF LENNY KAGAN
                      7911 Forsyth Boulevard, Suite 300
                      Clayton, MO  63105

Reported By:          Kristine A. Toennies, RMR, CRR, CSR, CRC
                      Official Court Reporter
                      United States District Court
                      111 South 10th Street
                      St. Louis, MO 63102 | (314)244-6701

        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
   PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

1                    SEPTEMBER 1, 2023

2          (The proceedings commenced at 11:02 a.m.)

3          **THE COURT:**  Good morning.  We are back on the record

4    in the *United States of America vs. Terrell Donta McDaniel*.

5    We are here today for a second attempt at a plea hearing that

6    we terminated yesterday, I terminated yesterday after

7    detecting some hesitancy on the part of the defendant about

8    whether he felt that he understood everything in his plea

9    agreement, and so we rescheduled for today.

10          Are the parties prepared to resume?

11          **MS. GRAVISS:**  Yes, Your Honor.

12          **MR. KAGAN:**  Yes, Your Honor.

13          **THE COURT:**  Let me have you both announce your

14    appearance for the record.

15          **MS. GRAVISS:**  Jeannette Graviss for the United

16    States.

17          **MR. KAGAN:**  And Lenny Kagan for Terrell McDaniel

18    who's also present here in the courtroom.

19          **THE COURT:**  All right.  And as I mentioned, we are

20    having a plea hearing.  The defendant has signed a plea

21    agreement indicating that he wants to plead guilty to Count 1

22    and the lesser-included offense under Count 2 of his

23    indictment, and we are here today to remind you, Mr. McDaniel,

24    to consider or to make sure that you appreciate all the

25    possible consequences of making that decision and then that

1    there are facts to support it before ultimately you decide

2    whether or not to enter your guilty plea and I decide whether

3    or not to accept it based on today's hearing.

4            So that's the purpose of today's hearing.  I

5    understand the parties are prepared to proceed.

6            Mr. McDaniel, you'll remember from yesterday I'm

7    going to have you sworn in, and after you take the oath, it's

8    very important to be honest in all of your answers.  Do you

9    understand?

10           **THE DEFENDANT:**  Yes, ma'am.

11           (Defendant sworn in by the deputy clerk.)

12           **THE COURT:**  Everything I told you yesterday stands.

13   To recap what I told you at the beginning of yesterday's

14   hearing, the purpose of the hearing is to make sure you

15   understand what you should understand before you undertake to

16   plead guilty, so if you don't understand something, I need you

17   to ask me to explain or ask to speak to your attorney because

18   the number one concern is that you are fully in understanding

19   of what we are doing.  So that's the first thing.

20           Secondly, you have a right to remain silent under

21   the United States Constitution, and what that means is that no

22   one can force you to say anything to connect yourself with a

23   crime, and so if you should decide at any time today you don't

24   want to answer my questions, you can stop.  That's your

25   choice.  But if you do answer my questions, it's important to

1  do so truthfully because you are under oath.

2        I won't make you repeat your name and age, but let

3  me just confirm your answers to some of my other questions

4  that I asked yesterday.

5        One was your educational background.  I think I

6  remember you saying that you don't remember exactly when you

7  stopped going to school, but you may have stopped during

8  middle school, is that correct, as early as middle school?

9        **THE DEFENDANT:**  I didn't make it to middle school.

10       **THE COURT:**  You didn't make it to middle school.  So

11 what was the last grade that you completed?

12       **THE DEFENDANT:**  I think about fourth.

13       **THE COURT:**  Fourth grade, okay.  And you said that

14 you have difficulty reading or at least comprehending what

15 you're reading; correct?

16       **THE DEFENDANT:**  Yes.

17       **THE COURT:**  This is again me just summarizing what

18 you said yesterday, so if I get it wrong, correct me; okay?

19       And so you said that your understanding of the plea

20 agreement is based on talking it over with your attorney, and

21 then also you said at one point that you had someone in your

22 facility read it to you when you were reviewing it; is that

23 correct?

24       **THE DEFENDANT:**  Yes.

25       **THE COURT:**  Okay.  And we talked at some length

1   about mental health conditions that you had been diagnosed

2   with, and yesterday you did not feel that those conditions

3   would be an impediment or would prevent you from being able to

4   make a good decision and being able to focus.

5           I am going to ask you again today, your mental

6   health conditions that we talked about yesterday, which I

7   believe included ADHD, bipolar, schizophrenia and PTSD; is

8   that correct?

9           **THE DEFENDANT:**  Yes.

10          **THE COURT:**  Those are the diagnoses you've had in

11  the past?

12          **THE DEFENDANT:**  Yes.

13          **THE COURT:**  And you have not been treated for any of

14  them until since 2016; is that correct?

15          **THE DEFENDANT:**  Yes.

16          **THE COURT:**  You have asked in your jail for some

17  treatment and were declined, and you haven't pursued it

18  further than that; correct?

19          **THE DEFENDANT:**  Yes.

20          **THE COURT:**  You do sometimes experience symptoms;

21  correct?

22          **THE DEFENDANT:**  Yes.

23          **THE COURT:**  Okay.  But yesterday you indicated that

24  you did not think that any symptoms of those conditions would

25  prevent you from being able to participate in the hearing and

1  make a good decision.  We're in a different day.  You might be

2  feeling differently today, so I'm asking you as of right now,

3  sitting here right now, are you feeling any symptoms of your

4  mental health conditions?

5          **THE DEFENDANT:**  No.

6          **THE COURT:**  Do you think that you will be able to

7  focus and pay attention for the next half an hour?

8          **THE DEFENDANT:**  Yes.

9          **THE COURT:**  And will you be able to, if you start

10  experiencing symptoms, report that to me so that we can take a

11  break?

12          **THE DEFENDANT:**  Yes.

13          **THE COURT:**  You would be able to do that?

14          **THE DEFENDANT:**  Yes.

15          **THE COURT:**  Okay.  All right.  Do you have any

16  concerns about proceeding today based on your mental health

17  diagnoses?

18          **THE DEFENDANT:**  No.

19          **THE COURT:**  Okay.  And then have you taken anything

20  since yesterday?  Yesterday you indicated you hadn't taken

21  anything in the last day or two that would affect your mental

22  states, anything like alcohol, drugs or medications.  Is that

23  still true today?

24          **THE DEFENDANT:**  Yes.

25          **THE COURT:**  Yes, you haven't taken anything since

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

1  yesterday; okay.  It sounds like you feel comfortable with

2  your own ability to participate in today's hearing today; is

3  that correct?

4          **THE DEFENDANT:**  Yes.

5          **THE COURT:**  Does either party have any doubts about

6  the defendant's competency given what we discussed yesterday

7  and today?

8          **MS. GRAVISS:**  No, Your Honor.

9          **MR. KAGAN:**  No doubts, Your Honor.

10          **THE COURT:**  Okay.  Then on this record I find the

11  defendant competent to proceed.  I've never actually been in

12  this situation before.  We also talked about your attorney

13  yesterday.  Has anything changed about your assessment of your

14  attorney since yesterday?  Do you have any new complaints

15  about your attorney since yesterday?

16          **THE DEFENDANT:**  I didn't have any complaints about

17  him.

18          **THE COURT:**  That's correct; you had no complaints

19  yesterday.  Are there any ones that have arisen since

20  yesterday?

21          **THE DEFENDANT:**  No, ma'am.

22          **THE COURT:**  Okay, thank you.  And I won't make us

23  repeat the bench conference unless there's any new information

24  to report in that context.  Is there?

25          **MS. GRAVISS:**  No, Your Honor.

1        **MR. KAGAN:** No, Your Honor.

2        **THE COURT:** Okay, thank you. I feel certain that

3   anyone looking at the docket of this case can know to refer

4   back to look at both transcripts together.

5        Okay, then we will move on to what we were doing

6   when we broke yesterday, which was verifying, Mr. McDaniel,

7   that you had -- you were familiar with all of the aspects of

8   your guilty plea agreement, which is trickier in your case

9   than in some because you have difficulty reading. And so I

10  was talking to you about whether you felt that you understood

11  everything in the agreement before you signed it, and it

12  seemed like you had some hesitation confirming that. And then

13  eventually when I was explaining to you why it was important

14  that you understand everything in your agreement, you, I

15  believe, said, "I just want to get it over with," which gave

16  me some concern that you were proceeding even though you

17  didn't necessarily think that you understood everything in

18  your plea agreement. We talked yesterday about why you

19  shouldn't proceed without understanding it. You understand

20  that; right?

21        **THE DEFENDANT:** Yes.

22        **THE COURT:** Okay. So have you had a chance to

23  review it to the extent that you're able to and to talk to

24  your attorney more about that agreement since yesterday?

25        **THE DEFENDANT:** Yes.

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

1          **THE COURT:**  You have done some more review of that?

2          **THE DEFENDANT:**  Yes.

3          **THE COURT:**  Have you asked any questions that you

4   have about it to your attorney?

5          **THE DEFENDANT:**  Yes.

6          **THE COURT:**  Okay.  And have you gotten answers to

7   any questions like that?

8          **THE DEFENDANT:**  Yes.

9          **THE COURT:**  Okay.  Then I'll ask you again at this

10  time -- you signed it yesterday; correct?  Is that right?  You

11  signed the document yesterday?

12         **THE DEFENDANT:**  Yes, ma'am.

13         **THE COURT:**  Okay.  And it's only 24 hours later.  At

14  this moment do you believe you understand what's in your plea

15  agreement?

16         **THE DEFENDANT:**  Yes.

17         **THE COURT:**  Okay.  We're going to talk through some

18  of it today to make sure, but it's important that in signing

19  this you felt that you were in command of its contents, that

20  you knew what you were signing.  Did you feel like that?

21  Well, I'm sorry.  I shouldn't ask you that because yesterday

22  you seemed hesitant.  Right now if you were asked to sign this

23  document, would you sign it again?

24         **THE DEFENDANT:**  Yes.

25         **THE COURT:**  You would?  And at this time do you

1   believe that you understand everything that's in it?

2           **THE DEFENDANT:**  Yes.

3           **THE COURT:**  You do?

4           **THE DEFENDANT:**  Yes.

5           **THE COURT:**  Okay.

6           **MR. KAGAN:**  Your Honor?

7           **THE COURT:**  Yes.

8           **MR. KAGAN:**  I apologize for cutting you off.

9           **THE COURT:**  No, that's all right.  Do you want to

10  add something to the record on this?  I'd be happy to hear it.

11          **MR. KAGAN:**  Just very briefly, Judge.  Just that

12  Terrell takes a second or two to process every question,

13  whether it's from you or myself whenever we meet.  He doesn't

14  just spout out an answer right out of the gates.  He always

15  takes a few seconds to think about what the proper answer is

16  according to him being truthful.

17          So if the Court perceives his answers to be a little

18  too slow, that's why Terrell is doing that, not to think about

19  anything other than how to truthfully answer a question.

20          **THE COURT:**  That's totally fair.  I hope that he

21  takes the time that he needs to answer my questions.

22          **MR. KAGAN:**  Thank you.

23          **THE COURT:**  No one is trying to rush you.  You

24  answer in all deliberate -- with all deliberate care.  My

25  concern yesterday was not so much with any kind of momentary

1  delay but with a pattern over the course of the hearing of

2  not -- it seemed like not feeling comfortable directly

3  answering my questions and also then the content of the

4  ultimate answers.

5      So today it seems to me that the defendant feels

6  confident that he understands what's in the agreement, and

7  we're going to confirm that, so let's keep going unless

8  there's any objection.

9      **MS. GRAVISS:**  No, Your Honor.

10     **MR. KAGAN:**  No objections, Your Honor.  Thank you.

11     **THE COURT:**  The agreement that you have in front of

12 you, which we're going to talk about today, is this the only

13 agreement that exists in your case?  Do you want me to

14 rephrase?  Has anyone promised you anything else other than

15 what's in this agreement?

16     **THE DEFENDANT:**  No.

17     **THE COURT:**  Okay.  And has anyone threatened you to

18 get you to sign this?

19     **THE DEFENDANT:**  No.

20     **THE COURT:**  Has anyone pressured you to get you to

21 plead guilty?

22     **THE DEFENDANT:**  No.

23     **THE COURT:**  Okay.  I'm about to describe some of the

24 terms of the agreement, Mr. McDaniel, and I am going to talk

25 about what you're agreeing to and what the government is

1    agreeing to because those are the two parties to the

2    agreement.

3              When I say the government, though, I'm only talking

4    about the prosecutor here in the eastern half of Missouri, so

5    Ms. Graviss' office is the part of the government that has

6    signed this agreement.  You're aware of that; correct?

7              **THE DEFENDANT:**  Yes.

8              **THE COURT:**  So there are many other parts of the

9    United States government that I'm not talking about today when

10   I say the government.  Do you understand?

11             **THE DEFENDANT:**  Uh-huh, yes.

12             **THE COURT:**  Okay.  All right.  I want you to keep

13   that in mind as we discuss your agreement.  So the first part

14   of the agreement is that you are agreeing to enter a guilty

15   plea to Count 1 and to the lesser-included offense under

16   Count 2.  That's what you're agreeing to do.  And the

17   government is agreeing not to bring any further federal

18   prosecution against you in this district relating to the

19   following.  They're not going to bring any prosecution related

20   to the following:

21             Your conspiracy to distribute and possess with

22   intent to distribute fentanyl between October 2022 and

23   November 2, 2022.  And they're also not going to bring any

24   further prosecution based on your use of a firearm in

25   furtherance of a drug-trafficking crime.  Those are the two

1  things they're agreeing not to bring any more prosecution

2  based on.

3         Do you have any questions about what that means?

4         **THE DEFENDANT:**  No.

5         **THE COURT:**  Do you understand that that's what the

6  agreement is?

7         **THE DEFENDANT:**  Yes.

8         **THE COURT:**  Okay.  The parties have also agreed to

9  some of how the United States Sentencing Guidelines should

10 apply in your case.  Mr. McDaniel, do you understand what I

11 mean generally when I say the sentencing guidelines?

12        **THE DEFENDANT:**  Yes.  No --

13        **THE COURT:**  They're very complicated, so I'm not

14 asking if you understand every detail of the sentencing

15 guidelines.  Do you know what I mean when I say the sentencing

16 guidelines?  Have you seen a chart that gives the -- gives me

17 a recommendation about a recommended sentence?

18        **THE DEFENDANT:**  No.

19        **THE COURT:**  You have not seen the chart, okay.  Do

20 you know what I mean when I say that at your sentencing there

21 will be guidelines that I have to apply?

22        **THE DEFENDANT:**  Yes.

23        **THE COURT:**  You generally know what that is?

24        **THE DEFENDANT:**  I kind of, yeah.

25        **THE COURT:**  Okay.  Do you know that part of your

1   agreement is that your attorney and the government's attorney

2   have talked about how the guidelines are likely to apply in

3   your case?  Do you understand that that's part of this

4   document?

5           **THE DEFENDANT:**  I -- yes.

6           **THE COURT:**  Okay.  Well, they have, and we're going

7   to talk about the details of that.

8           **MR. KAGAN:**  Judge, could we take one second?

9           **THE COURT:**  Yes.

10          **MR. KAGAN:**  Thank you.

11          (A discussion was held off the record.)

12          **THE DEFENDANT:**  Sorry about that, Judge.  I remember

13  now.

14          **THE COURT:**  Okay.  So you've talked to your

15  attorney, and he reminded you of conversations you've had

16  about this issue?

17          **THE DEFENDANT:**  Yes.

18          **THE COURT:**  Okay.  So I don't know what words he

19  used to describe what I'm talking about, but the official name

20  of them are the sentencing guidelines; okay?  And we're going

21  to talk about them as part of your agreement today, but you

22  understand that that's part of your agreement, that there's a

23  sentencing guidelines aspect to it?

24          **THE DEFENDANT:**  Yes, ma'am.

25          **THE COURT:**  Okay.  And then the parties have also

1  agreed -- and this is why the guidelines are important -- that

2  at sentencing your counsel and the government's counsel are

3  both going to request that I give you a sentence within the

4  guidelines range.  So the guidelines are going to give me a

5  recommended range, and counsel is going to, depending on what

6  they think is appropriate, they could come in and recommend

7  that I give you, you know, any sentence that they want, but in

8  this particular case, they've agreed that you should get a

9  guidelines-range sentence.  Now, do you understand that that's

10  part of the agreement?  Do you want to ask your counsel what

11  that means?

12          **THE DEFENDANT:**  Yes, ma'am, please.

13          **THE COURT:**  Go ahead.

14          (A discussion was held off the record.)

15          **MR. KAGAN:**  Thank you, Your Honor.

16          **THE COURT:**  Okay.  So I'm going to summarize it

17  again because it's an important part of the agreement.  The

18  parties have agreed to some of how they think the guidelines

19  apply.  That's one part.  And then they've also agreed -- and

20  by "they," I mean you and the government.  So this is you as

21  represented by your attorney and then the government have

22  agreed at sentencing you're going to recommend to me that you

23  receive a sentence within the guidelines range.  Do you have

24  any questions for me about what that means?

25          **THE DEFENDANT:**  I like your opinion.

1      **MR. KAGAN:**  I think that will be attempted.

2      **THE COURT:**  Yeah, I don't give opinions on things at

3  this stage because I don't know enough about your case to do

4  that.  Do you understand?

5      **THE DEFENDANT:**  Yes, ma'am, but I understand though.

6      **THE COURT:**  So it would be a disservice to everyone

7  involved if I were to try to speculate on what your sentence

8  will be because, of the people in this room, I know the least

9  about your case.  The only thing that I'm here for today is to

10  make sure that your rights are protected in the process of

11  making your guilty plea.  Do you understand?

12      **THE DEFENDANT:**  Yes, ma'am.

13      **THE COURT:**  Okay.  I will tell you -- and this is

14  what I tell everyone; this is not in response to your

15  question.  What counsel asks me to do at sentencing, so what

16  they tell me about how they think the guidelines should apply

17  and then what they tell me about how, you know, they think I

18  should give you a sentence, I will hear all of that and I will

19  consider it all while I'm deciding about your sentence, but I

20  may not do what they ask me to do.  Those are recommendations.

21  Ultimately it's my decision to decide how the guidelines

22  apply, and it's my decision to decide what sentence you should

23  get.  And the guidelines give me advice, and counsel gives me

24  advice, and you'll have the opportunity to speak to me, but

25  ultimately, for better or for worse, I have to make that

1    decision.  Do you understand?

2              (Defendant nodded.)

3              **THE COURT:**  Can you say yes out loud?

4              **THE DEFENDANT:**  Yes.

5              **THE COURT:**  And because of that, you should keep in

6    mind that even though they've agreed to do a certain thing,

7    that doesn't mean I'm going to do that certain thing.  Do you

8    understand?

9              **THE DEFENDANT:**  Yes, ma'am.

10             **THE COURT:**  Okay.  Counsel are very good at their

11   jobs and they know your case better than I do, and I'm sure

12   they're making their recommendations for good reasons, but

13   there are no guarantees at the plea of any particular outcome

14   at sentencing.  Do you understand?

15             **THE DEFENDANT:**  Yes, ma'am.

16             **THE COURT:**  And that's because it's my job to make

17   the decision, and I don't have everything I need to make that

18   decision at this time.  All right?  So you should, yes, keep

19   that in mind as we're talking about the sentencing guidelines,

20   etc.  All of that is their best prediction of how it's going

21   to go at sentencing.  They're very good at their jobs.  Often

22   they're exactly right about how the guidelines apply, but

23   stuff can happen that makes the guidelines apply differently

24   than what they're expecting.  Do you understand?

25             **THE DEFENDANT:**  Yes, ma'am.

1    **THE COURT:**  Do you have any questions about the
2  terms that we've talked about so far before I move on?
3    **THE DEFENDANT:**  No, ma'am.
4    **THE COURT:**  Okay.  So that's the basics of your
5  agreement.  Now I'm going to talk about essentially what
6  you're giving up by pleading guilty, so rights that you have
7  like to go to trial, etc., that if you plead guilty today,
8  you're giving those rights up; okay?  And I'm going to just
9  list some of them, and if you have any questions about them,
10  you can ask me or you can talk to your counsel about it; okay?
11    **THE DEFENDANT:**  Yes, ma'am.
12    **THE COURT:**  Okay.  So as you sit here today, you
13  have not yet pled guilty.  You have the right to maintain your
14  plea of not guilty.  You could continue to plead not guilty.
15  If you were to do that, you would go to trial.  At a trial --
16  and you're entitled to a speedy and public trial, so if you
17  said you wanted to go to trial, we would have a trial as soon
18  as possible, and it would be a public trial, and the -- you
19  would be presumed innocent at that trial.  What that means is
20  that it would be the government's job to bring evidence.  You
21  wouldn't have to bring evidence that you're innocent.  They
22  would have to bring evidence that you're guilty, and they
23  would have to bring enough evidence to persuade a judge or a
24  jury that you were guilty beyond a reasonable doubt.  That's
25  what would have to happen at a trial before you could be

1  convicted at a trial.  Do you understand?

2         **THE DEFENDANT:**  Yes, ma'am.

3         **THE COURT:**  Okay.  And at the trial you would have

4  the right to be represented by counsel.  You wouldn't have to

5  be there by yourself.  If you couldn't afford counsel, the

6  government would provide you with counsel.  And at the

7  counsel -- or sorry, at the trial, you and your counsel would

8  get to see and hear all of the evidence, and you would get to

9  challenge evidence if you wanted to.  You could cross-examine

10  any witnesses who testified; your counsel would, if you had

11  counsel, cross-examine any witnesses.  You could put on your

12  own evidence and witnesses if you wanted to, and you could

13  also testify yourself if you wanted to at your own trial.

14         But you also have the right to choose not to testify

15  at your own trial.  No one could force you to do that.  It's

16  entirely up to you.  D no one could assume you were guilty if

17  you chose not to testify at your own trial, and no one could

18  suggest to a jury that you must be guilty if you choose not to

19  testify at your own trial.

20         Do you understand that you have all of those rights?

21  If you chose not to plead guilty that's how things would go.

22  Do you understand that?

23         **THE DEFENDANT:**  Yes, ma'am.

24         **THE COURT:**  Okay.  If you enter your guilty plea

25  today to Count 1 and the lesser-included offense under

1    Count 2, then you will be found guilty of those charges just

2    as if we had had a trial, but there won't be a trial in your

3    case because you will have chosen to give up that right and

4    the other rights I just described.  Do you understand that's

5    what a guilty plea does?

6              **THE DEFENDANT:**  Uh-huh.  Yes, ma'am.

7              **THE COURT:**  Okay.  In addition to your trial rights,

8    by pleading guilty today and signing this agreement, you will

9    be giving up some of the rights a person has after they're

10   convicted to challenge their conviction or sentence in future

11   legal proceedings.

12             So let me start here.  Are you aware that normally

13   if you're convicted by a trial court you could go to a court

14   of appeals and appeal that conviction?

15             **THE DEFENDANT:**  Yes, ma'am.

16             **THE COURT:**  Okay.  And same with a sentence.

17   Normally if you receive a sentence from a trial court, you can

18   go to the court of appeals and argue you got the wrong

19   sentence.  Do you understand that?

20             **THE DEFENDANT:**  Yes, ma'am.

21             **THE COURT:**  Okay.  Part of your agreement is that

22   you're giving up some of that.  You're saying I won't get to

23   appeal under certain circumstances.  Are you aware of that?

24   This is a complicated part of this, so if you have questions

25   about it, you can ask your attorney, and if you want to, you

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

 1    can talk to him before I proceed to ask you questions about
 2    it.
 3            **MR. KAGAN:**  Maybe I will for one second.
 4            **THE COURT:**  You want to talk to him?  Okay.
 5            **MR. KAGAN:**  Yes, just one second.
 6            (A discussion was held off the record.)
 7            **THE COURT:**  Ms. Graviss, you can be seated during
 8    the recesses if you wish.
 9            **MS. GRAVISS:**  Thank you, Your Honor.
10            **THE COURT:**  I appreciate the respect and decorum
11    that you show for the Court.
12            **MS. GRAVISS:**  Thank you.
13            **MR. KAGAN:**  Thank you, Your Honor.
14            **THE COURT:**  All right.  Are you ready to continue?
15    Did you get to ask your attorney any question?
16            **THE DEFENDANT:**  Yes, ma'am.
17            **THE COURT:**  All right.  So we're going to talk about
18    the fact that you have some appeal rights but that you're
19    giving up some by signing this.  Do you understand that?
20            **THE DEFENDANT:**  Yes, ma'am.
21            **THE COURT:**  Okay.  I want you to understand a couple
22    of aspects of that specifically, so we're going to talk about
23    them.  For your sentence we've talked about how there's going
24    to be some guidelines applied at sentencing and that you and
25    the government are going to recommend to me a certain way of

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

1    applying those guidelines; right?  Do you understand that?

2            **THE DEFENDANT:**  Yes, ma'am.

3            **THE COURT:**  If I go along with that recommendation

4    and I apply the guidelines the way counsel thinks I should at

5    this time, then you will not get to go to the court of appeals

6    and argue that I did it wrong because I'm doing it the way

7    your counsel recommended.  Do you understand?  So if I go

8    along with counsel's recommendation, then you won't have an

9    argument for the court of appeals.  Does that make sense?

10           **THE DEFENDANT:**  Yes, ma'am.

11           **THE COURT:**  Okay.  Secondly, there's a part of the

12   calculation that has to do with your background, Mr. McDaniel.

13   Some things at sentencing will depend on whether you have past

14   convictions and what they are.  Do you understand that?

15           **THE DEFENDANT:**  Yes, ma'am.

16           **THE COURT:**  Okay.  If you and your counsel think I

17   make a mistake about that part of the sentencing, if I mess up

18   when I'm assessing your background, then you would get to go

19   to the court of appeals and argue that I made a mistake.  Does

20   that make sense?

21           **THE DEFENDANT:**  Yes, ma'am.

22           **THE COURT:**  Okay.  And then, finally, if I give you

23   a sentence that is above the guidelines range -- so there's

24   going to be a range; counsel is going to recommend that I give

25   you something within the range.  If I disagree with them and I

1  go above the range, then you would get to go to the court of

2  appeals and argue that I gave you an unreasonable sentence.

3  Does that make sense?

4       **THE DEFENDANT:**  Yes, ma'am.

5       **THE COURT:**  Okay.  But if I don't go above the range

6  and I calculate the range the way counsel thinks I should and

7  I don't make a mistake assessing your criminal history, under

8  those circumstances you would not get to go to the court of

9  appeals.  Does that make sense?

10      **THE DEFENDANT:**  (Shook head.)

11      **THE COURT:**  No?  I'm just combining everything I

12  just told you.  So if I go along with counsel's recommendation

13  about the guidelines and I don't make another mistake about

14  your criminal history and I give you a guidelines-range

15  sentence, under those circumstances, then you won't get to go

16  to the court of appeals.  That's what you're agreeing to here.

17      Do you want to ask counsel any questions about that

18  before we proceed?

19      **THE DEFENDANT:**  No, ma'am.

20      **THE COURT:**  Okay.  Do you want to ask me any

21  questions about that before we proceed?

22      **THE DEFENDANT:**  No, ma'am.

23      **THE COURT:**  Okay.  You understand that that's what

24  you're agreeing to then; right?

25      **THE DEFENDANT:**  Yes, ma'am.

1    **THE COURT:**  There's another way -- first let me ask

2    counsel, have I accurately represented the appeal waiver?

3        **MS. GRAVISS:**  Yes, Your Honor.

4        **MR. KAGAN:**  Yes, Your Honor.

5        **THE COURT:**  Okay.  There's another way of going to

6    court later and arguing that you got the wrong sentence or

7    that you shouldn't have been convicted, Mr. McDaniel.  It's

8    not called an appeal.  It's called something else.  It's

9    called a habeas corpus petition.  Have you ever heard of that?

10        **THE DEFENDANT:**  No, ma'am.

11        **THE COURT:**  Well, it's another option you might have

12    in the future.  If you get a prison term as a sentence, you

13    might want to file a habeas corpus petition and argue that you

14    should have gotten a different sentence or that your

15    conviction was wrongful.  That's something that everybody has

16    the option of doing if they're in those circumstances.  And

17    you still will have that option after signing this, but you're

18    agreeing in this agreement that if you bring such a petition,

19    you'll only make two arguments.  You're only going to get to

20    argue that the prosecutor did something wrong or that your own

21    attorney made a mistake.  Those are the two kinds of arguments

22    you'll get to bring in a habeas corpus petition after signing

23    this agreement.

24        If you have questions about what that means, you

25    should ask your attorney before we move on.  Do you have

 1  questions about that?  You're welcome to ask him.

 2          Why don't you walk over and talk to him about the

 3  habeas corpus.

 4          **MR. KAGAN:**  Okay.

 5          (A discussion was held off the record.)

 6          **THE COURT:**  Mr. Kagan, I'm going to suggest under

 7  the circumstances that maybe you should sit with your client.

 8          **MR. KAGAN:**  Sure.

 9          **THE COURT:**  Thank you.  And Ms. Graviss, you can sit

10  too.  No reason why you should have to stand when everybody

11  else is seated.

12          **MS. GRAVISS:**  Thank you, Your Honor.

13          **THE COURT:**  Yes, thank you.  All right.

14  Mr. McDaniel, I'm going to remind you again because I know

15  that this can get tedious talking about all of this.  I'm

16  guessing it's a little trying; is that correct?

17          **THE DEFENDANT:**  Yes.

18          **THE COURT:**  Okay.  The purpose of this hearing is to

19  make sure that you are -- that you understand everything you

20  should understand before you plead guilty.  Do you understand

21  that?  You know that's why we're here?

22          **THE DEFENDANT:**  Yes.

23          **THE COURT:**  Please ask any questions that you have;

24  okay?

25          **THE DEFENDANT:**  Yes, ma'am.

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

1    **THE COURT:**  The time to ask them is now, not after

2    you've pled guilty.  Do you understand?

3         **THE DEFENDANT:**  Yes, ma'am.

4         **THE COURT:**  Okay.  All right.  Do you have any

5    questions about anything we've discussed so far, Mr. McDaniel,

6    before I move on?

7         (Discussion held off the record.)

8         **MR. KAGAN:**  Thank you, Judge.  We're ready.

9         **THE COURT:**  Okay.  Mr. McDaniel, any questions for

10   me before we move on?

11        **THE DEFENDANT:**  No.

12        **THE COURT:**  Okay.  The next thing I'm going to talk

13   about are the possible penalties for the offense.  So this

14   is -- what I'm about to say is what anyone who pleads guilty

15   to these offenses could receive at sentencing.  It's the most

16   that the law allows for anyone.  This is not the part where we

17   talk about what might be appropriate in your case.  That will

18   be at sentencing.  Right now I'm talking about what the law

19   allows for anyone who commits these crimes.  Do you

20   understand?

21        **THE DEFENDANT:**  Yes, ma'am.

22        **THE COURT:**  It's important for someone in your

23   situation to understand this because this is essentially the

24   worst-case scenario at sentencing; all right?

25        So your agreement states that for Count 1 -- I'm

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

1   going to remind myself -- Count 1 is conspiracy to distribute

2   and possess with intent to distribute fentanyl.  For that

3   charge, someone could receive up to 20 years of imprisonment,

4   up to $1 million of a fine, or they could receive both

5   imprisonment and a fine.  Are you aware of that possibility?

6           **THE DEFENDANT:**  Yes, ma'am.

7           **THE COURT:**  Okay.  They could also receive

8   supervised release of up to three years.  Do you know what

9   supervised release is?

10          **THE DEFENDANT:**  Parole?

11          **THE COURT:**  Well, probation.  It's a period of time

12  after you are released from incarceration when your activities

13  would be supervised by the probation office.  So it's a very

14  common part.  Do you need a break, Mr. McDaniel?

15          **THE DEFENDANT:**  No.

16          **THE COURT:**  Are you sure?

17          **THE DEFENDANT:**  Yes, ma'am.

18          **THE COURT:**  Because we have some terrain still to

19  cover, and I need to make sure that you are in the right place

20  to hear this stuff because I do need you to hear it; okay?

21          **THE DEFENDANT:**  (Nodded.)

22          **THE COURT:**  This is, again, all for your sake.

23  We're making sure of this for you; okay?

24          **THE DEFENDANT:**  (Nodded.)

25          **THE COURT:**  So you take the time if you need it.  Do

1    you need a break?

2         **THE DEFENDANT:**  No, ma'am.

3         **THE COURT:**  All right.  So supervised release is a

4    period of time when you're back in the community but the

5    probation office is supervising your activities and you would

6    have different kinds of requirements you would have to

7    fulfill.  I don't know what those would be.  They'll depend on

8    your personal circumstances, but they might include things

9    like drug treatment or mental health treatment.  Especially if

10   you have untreated mental health conditions, they would likely

11   include mental health treatment and other services that would

12   be provided to you and then also things like drug testing and

13   reporting requirements.

14        And if you were to fail to fulfill those

15   requirements, then you could find yourself facing additional

16   criminal penalties.  Do you understand that's how supervised

17   release works?

18        **THE DEFENDANT:**  Yes, ma'am.

19        **THE COURT:**  Okay.  So for Count 1 you could receive

20   up to three years of supervised release.  Count 2 -- and does

21   someone want to explain to me the lesser-included offense

22   under Count 2?  So Count 2 is, as charged, so I understand,

23   it's not a discharge charge that he's pleading guilty to; he's

24   pleading guilty to possession of a firearm in furtherance of a

25   drug-trafficking crime; correct?

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

1    **MS. GRAVISS:** He's pleading guilty to discharging a

2    firearm in furtherance of a drug-trafficking crime.

3    **THE COURT:** It is discharging, okay.

4    **MS. GRAVISS:** However, it is a lesser-included

5    offense because under the original charge, the government

6    alleged that the discharge of the firearm constituted murder

7    as defined under Title 18 United States Code Section 1111.

8    **THE COURT:** Yes, thank you.

9    **MS. GRAVISS:** So that is the element that the

10   government is seeking not to prove.

11   **THE COURT:** Okay.

12   **MS. GRAVISS:** And that is why it is now a

13   lesser-included offense.

14   **THE COURT:** So Count 2 is discharge of a firearm.

15   Let me let him speak to his counsel.

16   (A discussion was held off the record.)

17   **MS. GRAVISS:** In other words, I'm dropping the

18   murder.

19   **THE COURT:** Yes, I think I understand. So Count 2

20   that you would be pleading guilty to or the second count that

21   you would be pleading to would be discharge of a firearm in

22   furtherance of a drug-trafficking crime, and that carries a

23   maximum penalty of life imprisonment, so you could receive any

24   amount of imprisonment, a fine of up to $250,000, or you could

25   receive both imprisonment and a fine.

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

1          But the most salient consideration or the most

2    important thing for you to keep in mind is that for that

3    count, there is a mandatory minimum term of imprisonment.

4    That means I can't go below a certain amount of imprisonment,

5    and for this crime it's ten years of imprisonment.

6          And does that have to be imposed consecutive to any

7    other sentence?

8          **MS. GRAVISS:**  It does, Your Honor.  It will be

9    imposed consecutively to Count 1, but as we have calculated

10   the guidelines, that's not going to be a significant range.

11         **THE COURT:**  Not going to have a significant impact

12   on where he lies on the guidelines?

13         **MS. GRAVISS:**  Correct.

14         **THE COURT:**  Okay.  All right.  So you could also

15   receive supervised release of up to three years for Count 2.

16   Do you have any questions about the possible penalties for

17   Count 2 as we've just described them?

18         **THE DEFENDANT:**  No, ma'am.

19         **THE COURT:**  Okay.  Ms. Graviss, do you want to speak

20   to whether there's forfeiture or restitution?  There's a

21   forfeiture allegation, but is there anything to speak of here?

22         **MS. GRAVISS:**  There is a forfeiture allegation;

23   however, the government is not going to proceed on forfeiture.

24   The defendant doesn't have any appreciable assets, and the

25   only items that were seized were seized relative to the

1    investigation.

2            **THE COURT:**  Okay.  So all that the government -- all

3    that he's agreeing to give up his rights to today is the items

4    taken by law enforcement?

5            **MS. GRAVISS:**  Correct.

6            **THE COURT:**  Okay.  So Mr. McDaniel, by signing this

7    agreement, you are giving up any right to anything law

8    enforcement took from you.  Are you aware of that?

9            **THE DEFENDANT:**  Yes, ma'am.

10           **THE COURT:**  Okay.  Are there any items that you

11   thought you might get back?

12           **THE DEFENDANT:**  No, ma'am.

13           **THE COURT:**  Okay.  Mr. Kagan, can you move the

14   microphone closer to Mr. McDaniel so that he does not have to

15   lean forward and I can hear him better.  Thank you.

16           Okay.  And then there's no restitution?

17           **MS. GRAVISS:**  That's correct, Your Honor.

18           **THE COURT:**  Okay.  Mr. McDaniel, has anyone promised

19   you that you will receive a particular sentence if you plead

20   guilty today?

21           **THE DEFENDANT:**  No, ma'am.

22           **THE COURT:**  Okay.  And when you are sentenced to a

23   term of imprisonment in the federal system, it doesn't work

24   the same way as the state system.  We don't have parole, which

25   you mentioned earlier.  We don't have a system by which you

1  might get out of prison after serving only a small fraction of
2  your term.  If you are given, in your case at least a ten-year
3  prison term, you will serve substantially that entire term.
4  It may not be exactly ten years, but it would probably be at
5  least eight.  Do you understand that?

6          **THE DEFENDANT:**  Yes, ma'am.

7          **THE COURT:**  Okay.  Do you have any questions about
8  the possible penalties before I move on?

9          **THE DEFENDANT:**  No, ma'am.

10         **THE COURT:**  Then the next thing I'm going to talk
11  about are the sentencing guidelines, which you've already, I'm
12  sure, from our earlier conversation, you're aware that they
13  play a significant role in your sentencing.  I want to make
14  sure you understand the role that they play before we talk
15  about the agreement.

16         The guidelines are a set of laws Congress has passed
17  to give guidance to judges in deciding sentences.  And they
18  take into account the type of offense that was committed, and
19  they take into account the individual defendant's background.
20  If he or she has past convictions, those will factor into the
21  guidelines calculation.

22         Based on those two things, the offense and the
23  defendant's background, the guidelines give the judge in every
24  case they give a recommendation of a range of possible
25  penalties for that particular defendant.

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

1          Does that make sense so far?

2          **THE DEFENDANT:**  Yes, ma'am.

3          **THE COURT:**  So that's what they are.  I am required

4    to apply the guidelines and to do so carefully and correctly

5    in every case, and then I am required to consider what they

6    recommend, the range of penalties they recommend.  But the

7    guidelines are not binding on me.  I do not have to do exactly

8    what they say.  I have to think about what they say and take

9    it into account, but I also have to take into account a number

10   of other things.  There are other factors that might affect

11   whether I choose a guidelines sentence or not.  Do you

12   understand?

13         **THE DEFENDANT:**  Yeah.  Yes, ma'am.

14         **THE COURT:**  So at your sentencing I will apply the

15   guidelines.  I'll hear from counsel about that.  We'll talk

16   about the guidelines.  I'll figure out what they recommend,

17   and then I will move on and hear from counsel about a number

18   of other things, and you will also have the opportunity to

19   speak to me.

20         The kinds of things I have to think about are the

21   nature and circumstances of the offense.  I have to think

22   about your background, your history and characteristics.  I

23   have to think about what's necessary in order to do justice

24   and promote respect for the law.  I have to think about what's

25   necessary to deter others from making similar mistakes.  I

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

1  have to think about what's necessary to protect the public

2  from crime, and I also have to think about how to be fair to

3  people who commit similar crimes so that not everybody is

4  getting random sentences.  Do you understand?

5         **THE DEFENDANT:**  Yes, ma'am.

6         **THE COURT:**  So all of those things go into deciding

7  your sentence in addition to the guidelines.  So what I want

8  you to keep in mind is that the guidelines are a factor at

9  sentencing, but they are not the whole sentencing process.

10 They do not automatically determine your sentence.  Do you

11 understand?

12        **THE DEFENDANT:**  Yes, ma'am.

13        **THE COURT:**  So with that said, I'm going to talk

14 about the numbers that the parties have agreed to, and if you

15 have questions about what any of these numbers mean,

16 Mr. McDaniel, you can ask me or Mr. Kagan.  Do you understand?

17        **THE DEFENDANT:**  Yes, ma'am.

18        **THE COURT:**  This is the most technical part of this,

19 and so it's perfectly understandable if you have questions.

20        For Count 1, the parties have agreed that the base

21 offense level is 16 and that there are no characteristics of

22 the offense that would mean that that would have to go up.

23 And they've also agreed that because you have accepted

24 responsibility and will have pled guilty, you will be entitled

25 to a three-level deduction, and so the total offense level for

1    Count 1 you and the government anticipate will be 13.

2            For Count 2, which is the discharge of a firearm in

3    furtherance of a drug-trafficking crime, the guidelines

4    recommendation is just the mandatory minimum.

5            Is that correct, Ms. Graviss?

6            **MS. GRAVISS:**  Yes, Your Honor.

7            **THE COURT:**  Okay.  Because there is a mandatory

8    minimum of ten years consecutive to any other count, there is

9    nothing more to the guidelines calculation than that fact.

10           Have I accurately represented the parties' agreement

11   with respect to the guidelines?

12           **MS. GRAVISS:**  Yes, Your Honor.

13           **MR. KAGAN:**  Yes, Your Honor.

14           **THE COURT:**  So total offense level of 13 for

15   Count 1, mandatory minimum of ten years consecutive for Count

16   2.  That's what the guidelines recommend in your case.

17   Although, the total offense level doesn't mean anything until

18   at sentencing I'll combine it with the information about your

19   background, and those two things together will give the

20   recommendation of a sentence.

21           So number 13 probably doesn't mean anything to you,

22   but have you talked to your counsel about how that was

23   calculated, and do you have any questions for me?  Do you want

24   to ask counsel a question before we proceed?

25           (A discussion was held off the record.)

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

1          **MR. KAGAN:**  Thank you, Judge.  We're all set.

2          **THE COURT:**  I'm going to have the table printed out

3  so that he can look at it.

4          (A discussion was held off the record.)

5          **MR. KAGAN:**  We're all set, Your Honor.  Thank you so

6  much.

7          **THE COURT:**  Mr. McDaniel, have you had the

8  opportunity to ask your questions from counsel?

9          **THE DEFENDANT:**  Yes, ma'am.

10          **THE COURT:**  Do you have any questions for me about

11  the guidelines before I move on?

12          **THE DEFENDANT:**  No, ma'am.

13          **THE COURT:**  Okay.  All right.  Well, you'll be happy

14  to hear that the part of this where I make sure that you

15  understand what's in your plea agreement is over.  My job is

16  to make sure you understand the things we just discussed.

17          And then my other job, before I can accept your

18  plea, I have to find that there are facts to support your

19  plea.  We don't want people pleading guilty to things that are

20  not -- they didn't do.  Do you understand?

21          **THE DEFENDANT:**  Yes, ma'am.

22          **THE COURT:**  Okay.  So on page 2 of your agreement

23  or -- yes, page 2, and I'm sorry, you don't have to read

24  along.  I'll tell you what's in there; okay?  There's a

25  section called Elements which lists the elements of each of

1   the crimes you're planning to plead guilty to.  The elements

2   of a crime, Mr. McDaniel, are the things the government would

3   have to bring proof of if you were to go to trial.  If you

4   were to go to trial, they would have to prove each of these

5   things beyond a reasonable doubt before you could be

6   convicted.  Does that make sense?

7           **THE DEFENDANT:**  Yes, ma'am.

8           **THE COURT:**  I'm going to go through the elements for

9   each of the crimes, and I'm going to ask you to tell me if

10  they're true in your case.  Do you understand?

11          **THE DEFENDANT:**  Yes, ma'am.

12          **THE COURT:**  For the first offense, which is the

13  conspiracy to distribute and possess with intent to distribute

14  fentanyl, these are the things the government would have to

15  prove.  I'm going to stop after each one and ask you to tell

16  me if it's true.

17          The first thing they would have to prove is that two

18  or more people reached an agreement to distribute fentanyl.

19  That's the first thing.  Is that true in your case?  An

20  agreement or an understanding.  So you don't need to have

21  signed anything in order to qualify as true.

22          **THE DEFENDANT:**  Yes.

23          **THE COURT:**  That's true?  Okay.  The second thing

24  they would have to prove is that you joined that agreement

25  sometime either when it was first formed or sometime while it

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

1  was still in effect.  Did you join an agreement to distribute

2  fentanyl?

3          **THE DEFENDANT:**  Distributing, sell?

4          **THE COURT:**  Yes.

5          **THE DEFENDANT:**  No.

6          **THE COURT:**  Okay.

7          **MS. GRAVISS:**  Your Honor, may I?

8          **THE COURT:**  Yes.

9          **MS. GRAVISS:**  Did you, Mr. McDaniel, agree to obtain

10 fentanyl for Andre Nash?  So you were going to hand fentanyl

11 to Andre Nash?

12         **THE DEFENDANT:**  I personally for him, yes.

13         **MS. GRAVISS:**  Right.

14         **THE COURT:**  I didn't hear those exact words, so I'm

15 just going to try.

16         **MS. GRAVISS:**  You purchased it for him?

17         **THE DEFENDANT:**  Yes.

18         **MS. GRAVISS:**  So you purchased the fentanyl and then

19 you handed it to Andre Nash?

20         **THE DEFENDANT:**  Yes.

21         **MS. GRAVISS:**  That's what distribution is.

22         **THE COURT:**  Okay, yes.  Sometimes these terms mean

23 different things in the context we're using them in, so thank

24 you, Ms. Graviss.

25              And then when you did that, when you engaged in the

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

1    activity that Ms. Graviss just described, you knew that it
2    was -- the purpose of what you were doing of your arrangement
3    with Mr. Nash was to distribute fentanyl; is that correct?
4              **THE DEFENDANT:**  Yes.
5              **THE COURT:**  Okay.  For Count 2, the things the
6    government would have to prove in order to get a conviction at
7    trial are, first, that you committed the crime we just
8    discussed, which is the crime of conspiracy to distribute
9    fentanyl, and we just talked about that and you admitted to
10   each of those elements, so number one is actually already
11   satisfied by what you've already said.
12             The second thing that they would have to prove is
13   that you knowingly used a firearm in relation to your
14   participation in that conspiracy.  Did you do that?
15             **THE DEFENDANT:**  You're saying -- yes.
16             **THE COURT:**  You did use a firearm in relation to
17   your conspiracy to distribute fentanyl?
18             **THE DEFENDANT:**  Not -- I used a gun against Nash,
19   but it wasn't --
20             **THE COURT:**  Okay, why don't you guys confer, yes.
21             (A discussion was held off the record.)
22             **MR. KAGAN:**  Thank you, Judge.  I think we're ready
23   to proceed.
24             **THE COURT:**  So the second element is that you
25   knowingly used a firearm in relation to the conspiracy to

1   distribute fentanyl.  Is that correct?

2           **THE DEFENDANT:**  Yes, ma'am.

3           **THE COURT:**  Okay.  And third, you discharged the

4   firearm.  Did you fire the weapon?

5           **THE DEFENDANT:**  Yes, ma'am.

6           **THE COURT:**  All right.  There's another section of

7   your agreement that lists all the facts on the basis of which

8   the government believes that you did these things, and by

9   signing this agreement, Mr. McDaniel, you are telling me that

10  what's in that section is true.  Are you aware of that?

11          **THE DEFENDANT:**  Yes, ma'am.

12          **THE COURT:**  Okay.  So when it comes time to sentence

13  you, when it comes to your sentencing, Mr. McDaniel, I'm going

14  to be able to look at these facts and assume they're true

15  because you're telling me they are today.  Do you understand

16  that?

17          **THE DEFENDANT:**  Yes, ma'am.

18          **THE COURT:**  Okay.  Have you and your counsel talked

19  about this section to make sure that you agree that everything

20  in it is true?

21          **THE DEFENDANT:**  Yes, ma'am.

22          **THE COURT:**  Ms. Graviss, can you please recite the

23  facts.

24          And Mr. McDaniel, especially considering the

25  difficulty that you have reading, I'm going to ask Ms. Graviss

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

1  to go slowly and carefully recite exactly what's in this

2  document because then you will have another opportunity to

3  tell me if anything she said is not correct.  All right?  So

4  please pay attention because she's going to read exactly

5  what's here, and if any of it is not correct, you will have

6  the opportunity to tell me.

7          Ms. Graviss.

8          **MS. GRAVISS:**  Yes, Your Honor.  Before November 2,

9  2022, sometime last year, Mr. McDaniel entered into an

10 agreement with Andre Nash to purchase fentanyl for Nash.  Nash

11 gave Mr. McDaniel $500 in exchange for about 10 grams of

12 fentanyl.  The defendant -- I'm sorry, Mr. McDaniel did not

13 give Nash the total amount that Nash believed he had paid for

14 and began to look for Mr. McDaniel to collect on the debt.

15          And in fact, on November 1st of 2022, Mr. Nash

16 confronted Mr. McDaniel with a firearm, and the following day

17 Mr. Nash found out where Mr. McDaniel was staying, which was a

18 vacant house at 4138 Clara Place.  Nash went to that house to

19 collect the debt.  When Nash went inside the house, the

20 defendant, who was afraid -- Mr. McDaniel, who was afraid,

21 fired several shots at Nash and hit him twice in the chest and

22 once in the face.  And Nash died as a result of those gunshot

23 wounds.

24          Nash's body was found the next day at 5920 St. Louis

25 Avenue, and when medics arrived at that location, they found

1  Nash lying in tarps and in plastic.  And when they uncovered

2  him, they found out that he was dead from multiple gunshot

3  wounds.

4          The homicide detectives were able to find out that

5  Nash's body had been dumped there but that the defendant had

6  killed him back at 4138 Clara Place.  And with the help of

7  some other people who were in the area and in the

8  neighborhood, Nash's body was wrapped in tarps and placed in

9  the trunk of a stolen car before being driven to St. Louis

10  Avenue after dark.  And after that happened Mr. McDaniel

11  disposed of the gun that he had used to kill Mr. Nash.

12          **THE COURT:**  Thank you, Ms. Graviss.  If I'm not

13  mistaken, I think that the word "Nash" needs to be inserted in

14  the last sentence of the second paragraph on page 3 where it

15  says, "The defendant did not give Nash the amount of fentanyl

16  he had paid for, and Nash began to look for the defendant to

17  collect the debt."  Correct?

18          **MS. GRAVISS:**  Oh, yes.  Yes, your Honor.  It was

19  Nash who was looking to collect the debt.  Yes, Your Honor.

20          **THE COURT:**  Thank you.  I just want to make sure

21  there's no confusion about whether the defendant is the

22  subject of that part of the sentence.  It wouldn't make sense

23  because looking for the defendant, but let's be excessively

24  clear, shall we?

25          **MS. GRAVISS:**  Yes, Your Honor.

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

1          **THE COURT:**  All right.  So Ms. Zenon, can you add

2    the word "Nash" where I have it inserted on this page here,

3    and then you can hand that to defense counsel and make sure

4    that they approve of that modification.  She'll make the

5    change in the actual --

6          **MS. GRAVISS:**  In the PDF.

7          **THE COURT:**  -- PDF, but we'll have you indicate your

8    authorization thereof on it.  Yes, that would be great.  Thank

9    you.

10         **DEPUTY CLERK:**  I can print this page.

11         **THE COURT:**  Maybe we will have the initials --

12         **MS. GRAVISS:**  You want the initials?  Sorry about

13   that.

14         **THE COURT:**  But she can print a clean page so you

15   don't have to lose yours.

16         **DEPUTY CLERK:**  I will print the page I entered.

17         **THE COURT:**  Oh, the modified page, great.

18         **DEPUTY CLERK:**  That way you can just sign it.

19         **THE COURT:**  And Mr. Kagan, if you could explain to

20   your client why we did that.

21         **MR. KAGAN:**  I just did, Judge.

22         **THE COURT:**  Okay.  Make sure that he's okay with it.

23   And if he can authorize it too, that would be great.

24         So with that modification to the paper, I believe

25   that what Ms. Graviss just recited reflects what's in the

1  agreement.

2          Mr. McDaniel, did you understand everything that

3  Ms. Graviss said?  I'll ask you again another question too,

4  but first, did you hear everything she said and understand it?

5          **THE DEFENDANT:**  Yes, ma'am.  Yes, ma'am.

6          **THE COURT:**  Okay.  My next question is do you have

7  any questions about anything that she said for me or for your

8  counsel?

9          **THE DEFENDANT:**  I mean, a situation like this,

10  when -- everything she said was true.

11          **THE COURT:**  Okay.

12          **THE DEFENDANT:**  But --

13          **THE COURT:**  Before you say anything else, you should

14  just make sure you talk to Mr. Kagan about anything you want

15  to put on the record.

16          (A discussion was held off the record.)

17          **THE COURT:**  Okay, Mr. McDaniel, did you get to ask

18  your counsel any questions you had?

19          **THE DEFENDANT:**  Yes, ma'am.

20          **THE COURT:**  Okay.  So then my question was, do you

21  have any questions for him or for me?  Do you have anything

22  else to say to me about those facts?  You said --

23          **THE DEFENDANT:**  No, ma'am.

24          **THE COURT:**  On -- okay.  You said, I think -- I'll

25  ask you to confirm it -- everything she said was true, and

1  then you were considering saying something else.  Do you still
2  believe everything she said was true?
3          **THE DEFENDANT:**  Yes, ma'am.
4          **THE COURT:**  All right.  Then I have only a few more
5  important things for you to keep in mind as you make your
6  final decision today about whether to enter your guilty pleas;
7  all right?  And then we will have the actual process.
8          The first thing I need to remind you of is that the
9  plea agreement only relates to this prosecutor and this
10 misconduct, so it doesn't reach any other misconduct.  It
11 doesn't protect you from prosecution from anything except what
12 we've discussed today.  Do you understand that?
13         **THE DEFENDANT:**  Yes, ma'am.
14         **THE COURT:**  Okay.  And also, the only prosecutor's
15 office that's signing it is the Eastern District of Missouri,
16 and that's the only part of the government that's affected by
17 this agreement.  There are many other parts of the United
18 States government that if you have an issue with them, it's
19 not going to be affected by this agreement.  So if you have a
20 tax dispute with the government or an administrative dispute
21 or some kind of civil lawsuit with the United States
22 government, none of that would be affected by this agreement.
23 Do you understand?
24         **THE DEFENDANT:**  Yes, ma'am.
25         **THE COURT:**  This agreement only affects what we

1   talked about today.  Do you understand?

2           **THE DEFENDANT:**  Yes, ma'am.

3           **THE COURT:**  Okay.  Secondly, I have to remind you

4   that what's in this agreement, it's an agreement between you

5   and the prosecutor.  What's in it are recommendations to me,

6   and at sentencing I will hear those recommendations and I will

7   hear from counsel about the reasons for those recommendations,

8   but if I do not follow those recommendations, it's not going

9   to affect your agreement, and you will not be able to withdraw

10   your guilty plea if I don't do what's in this agreement.  Do

11   you understand?

12           **THE DEFENDANT:**  Yes, ma'am.

13           **THE COURT:**  Okay.  And finally, I have to make sure

14   you understand that individuals who are guilty of felonies in

15   our society who have been convicted of felonies do not enjoy

16   certain civil rights that American citizens otherwise enjoy,

17   and so if you plead guilty to felonies today as you propose to

18   do, then that could have the effect that you, depending on

19   your jurisdiction, you may no longer enjoy the right to vote,

20   you may not be able to run for certain public offices, you

21   might not be able to serve as a juror depending on the

22   jurisdiction, and you also under federal law will not be able

23   to possess any kind of firearm or ammunition.  Do you

24   understand those consequences of being a felon or pleading

25   guilty to felonies today?

1          **THE DEFENDANT:**  Yes, ma'am.

2          **THE COURT:**  Do you have any questions for me or for

3     your counsel before I hear your change of plea?

4          **THE DEFENDANT:**  No, ma'am.

5          **THE COURT:**  Does counsel believe there's anything

6     else I should bring to Mr. McDaniel's attention before I hear

7     his change of plea today?

8          **MS. GRAVISS:**  No, Your Honor.

9          **MR. KAGAN:**  No, Your Honor.

10          **THE COURT:**  All right.  Then Mr. Kagan and

11     Mr. McDaniel, would you please come to the podium.

12          All right.  Mr. McDaniel, these will be the most

13     important two questions that you answer today, so make sure to

14     speak loud and clear into the microphone so we cannot possibly

15     make a mistake about your answer.  All right?

16          For Count 1, as to Count 1 of the indictment, which

17     is conspiracy to distribute fentanyl, how do you wish to

18     plead?

19          **THE DEFENDANT:**  Guilty.

20          **THE COURT:**  And as to the lesser-included offense

21     under Count 2 of the indictment, discharge of a firearm in

22     relation to a drug-trafficking crime, how do you wish to

23     plead?

24          **THE DEFENDANT:**  Guilty.

25          **THE COURT:**  Mr. McDaniel, have you understood all of

USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP

1  the questions I have asked you here today?

2          **THE DEFENDANT:**  Yes.

3          **THE COURT:**  Have you answered all of them honestly?

4          **THE DEFENDANT:**  Yes.

5          **THE COURT:**  Are you pleading guilty to the two

6  counts that I just described because you believe you are

7  guilty as charged?

8          **THE DEFENDANT:**  Yes.

9          **THE COURT:**  Then I find in the case of the *United*

10  *States of America vs. Terrell Donta McDaniel* that Mr. McDaniel

11  is fully competent and capable of entering an informed plea,

12  that Mr. McDaniel is aware of the nature of the charges and of

13  the consequences of his plea, and that the plea of guilty is

14  knowing and voluntary, made willingly and intelligently and

15  supported by an independent factual basis containing each of

16  the essential elements of each offense.

17          Mr. McDaniel, I accept your pleas, and I find you

18  guilty of Count 1 as charged and of the lesser-included

19  offense under Count 2.

20          Your sentencing will be on November 29th at

21  11 a.m.  Between now and then, the probation office is going

22  to reach out to speak to you when they're putting together a

23  report that contains all of the information I'm going to need

24  in order to apply the guidelines and consider all of those

25  other factors I said I have to consider at your sentencing.

1  They're going to reach out to you, and when you speak to the

2  probation office, it's important that you have Mr. Kagan

3  present.  Do you understand?

4          **THE DEFENDANT:**  Yes, ma'am.

5          **THE COURT:**  Okay.  After they complete their report,

6  you will receive a copy of it, and you should review it or

7  have someone help you review it, read it to you in detail

8  because I will be looking at it in detail when I am deciding

9  on your sentence.  And so if there's anything in that report

10 that's wrong, you will want to make sure I know that before

11 your sentencing.  So you will want to make sure that you and

12 Mr. Kagan have carefully reviewed it to make sure there's

13 nothing in it that's wrong with enough time so that he can let

14 me know before sentencing.  Do you understand?

15         **THE DEFENDANT:**  Yes, ma'am.

16         **THE COURT:**  And finally, I'll remind you that at

17 your sentencing not only will Mr. Kagan have the opportunity

18 to speak on your behalf, but you will have the opportunity to

19 speak to me, and I hope that you will give careful

20 consideration between now and then to anything you might like

21 to say to me in the context of your sentencing.  Do you have

22 any questions?

23         **THE DEFENDANT:**  No, ma'am.

24         **THE COURT:**  Is there anything else for the Court

25 before we adjourn today?

1          **MS. GRAVISS:**  No, Your Honor.

2          **MR. KAGAN:**  No, Your Honor.  Thank you.

3          **THE COURT:**  Then Mr. McDaniel is remanded to the

4    custody of the United States Marshals Service to return in

5    November for sentencing.

6          Thank you, counsel.  Thank you, marshals.  We're

7    adjourned.

8          (Hearing concluded at 12:09 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*USA v. TERRELL DONTA McDANIEL | 4:23-CR-00002-SEP*

## CERTIFICATE

I, Kristine A. Toennies, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 50 inclusive and was delivered electronically and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

Dated at St. Louis, Missouri, this 30th day of November, 2023.


*/s/ Kristine A. Toennies*
Kristine A. Toennies, RMR, CRR, CRC, CCR
Official Court Reporter